HOLCOMB et al. v. PEOPLE'S TRUST CO.

(Circuit Court of Appeals, Sixth Circuit. May 7, 1913.)

No. 2,331.

1. GUARANTY (§ 73*)—VALIDITY—RENEWAL AFTER MODIFICATION OF ORIGINAL CONTRACT.

Defendants, with others, signed a written agreement to guarantee a loan of $100,000, to be made by plaintiff to a corporation; each severally becoming guarantor for a stated sum. One guarantor not being acceptable to plaintiff, the loan as made was only $90,000. It was renewed from time to time on written consent of the guarantors, which recited that it was for $90,000 and provided that "all the covenants and provisions" of the original agreement should apply to the loan as extended. Held that, whether or not defendants were released from their original guaranty by the modification of the loan contract, they were bound by their express promise in the extension agreements.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 83; Dec. Dig. § 73.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. Guaranty (§ 73*)—Validity—Renewal After Modification of Contract.
  For similar reason, a claim by defendants that they signed both original and extension agreements in reliance on the fact that another of the guarantors was a party did not constitute a defense, where the recitals of the last extension agreement showed that another had been substituted for such person.

  [Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 83; Dec. Dig. § 73.*]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; William L. Day, Judge.

Action at law by the People's Trust Company against J. W. Holcomb and Jay E. Latimer. Judgment for plaintiff, and defendants bring error. Affirmed.

The Trust Company recovered against Holcomb and Latimer a judgment, based upon their guaranty of a loan made by the Trust Company to the Crescent Oil Company. The preliminary agreement bore date March 9, 1905. It recited that the Oil Company (second party) desired to borrow $100,000, and that the Trust Company (first party) was willing to make the loan upon receiving the assurances contemplated by the agreement; that the subscribers (third party), who should sign, would severally guarantee the repayment to the Trust Company of the amounts set opposite their respective names; and that the agreement to loan the $100,000 should not be binding on the Trust Company until guarantors satisfactory to the Trust Company had signed the agreement to the amount of $100,000. Holcomb and Latimer each signed this for $10,000, Peters for $25,000, Roycroft for $20,000, Conners for $25,000, and Mills for $10,000. The Trust Company eventually refused to accept Mills as a guarantor. Under date of March 25, 1905, the Oil Company executed its note to the Trust Company for $100,000; but no substitute for Mills was furnished, and $90,000 was the total ever loaned on the note. Under the same date, March 25, 1905, all the third party subscribers to the preliminary agreement signed also a separate paper, by which they made the guaranty which they had agreed to make. This debt was not paid, and was repeatedly extended, for six months each time. Holcomb and Latimer consented in writing to each extension. March 26, 1906, two of the guarantors, Peters and Roycroft, paid up their $45,000 liability, Peters later paid the Conners $25,000, but Holcomb and Latimer paid nothing. May 23, 1906, by contract between Peters, Conners, and the Trust Company, Peters was fully substituted for Conners, and the latter released. Finally the Oil Company enterprise was abandoned and this suit was brought.

It is claimed on behalf of Holcomb and Latimer that Peters was the promoter and chief spirit in the Oil Company enterprise; that they joined in the guaranty purely for his accommodation; that they were acquainted with Conners, and had great confidence in his ability and judgment; that they were induced to sign because of the representation by Peters that Conners was interested and would sign for $25,000, and because of their belief that it would be safe to take risks in the enterprise with which Conners was connected and in which he was willing to take risk; and that their various consents to extension of time were also upon representation by Peters and upon the supposition that Conners was approving the same extensions and that they were safe in following his judgment. It was also claimed by Holcomb and Latimer that in truth (though not discovered by them until after the last extension) Conners, while he did sign the guaranty, as it was represented he would do, did so as a mere dummy for Peters, and had, in fact, no interest in the enterprise and took no risk; that the amount, so apparently guaranteed by Conners, was, before some of the last extensions, assumed by Peters, so that, at the last extensions, Conners had become an entire stranger, both in fact and in form, to the whole transaction.

Based upon these claims, Holcomb and Latimer presented three defenses in

the District Court, all of which were overruled, and all of which they have endeavored to preserve and to urge in this court. They are: (1) The $90,-000 loan, which was made to the Oil Company, was not the $100,000 loan, the payment of which they had guaranteed. (2) It was a condition of their liability that Conners was in good faith a party, and this condition was broken. (3) It was a condition of their consent to the last extension that Conners also should consent, and this he did not do. As bearing upon these defenses, it should be further stated that the successive extensions and consents signed by all parties were in similar form, except as each brought the recital of events down to date. The latest will sufficiently indicate their character. Its material parts are as follows:

"This agreement, made this 26th day of September, 1908, by and between the People's Trust Company, a corporation organized under the laws of the state of New York (hereinafter called the 'Trust Company'), party of the first part, the Crescent Oil, Asphalt & Gas Company, of Chicago, a corporation organized under and by virtue of the laws of South Dakota (hereinafter called the 'Oil Company'), party of the second part, and the subscribers to an underwriting agreement between the parties hereto, dated March 26, 1905 (who are hereinafter called the 'Underwriters'), parties of the third part:

"Whereas, in pursuance of the aforesaid agreement, the People's Trust Company has heretofore made a loan to the 'Oil Company' of ninety thousand ($90,000) dollars, to be paid within one year * * * and the various 'Underwriters' severally, but not jointly, guaranteed to the said 'Trust Company' the repayment of the pro rata part of the principal of said loan with interest: * * *

"Whereas, various extensions have been made, and a further extension is desired by second and third parties; and

"Whereas, H. H. Peters, who was an underwriter for the sum of twenty-five thousand ($25,000) dollars, and Herbert E. Roycroft, who was an underwriter for the sum of twenty thousand ($20,000) dollars, have paid to the said 'Trust Company' in cancellation of their said underwriting the said amounts underwritten by them, respectively, making an aggregate of forty-five thousand ($45,000) dollars; * * * and

"Whereas, the said H. H. Peters, at the time of the execution of the agreement, dated September 26, 1907, paid to the said 'Trust Company,' in cancellation of said amounts underwritten by him in his said underwriting, the further sum of ten thousand ($10,000) dollars: * * *

"First. The 'Trust Company' agrees that in consideration of the payment made to it of the interest due on the said loan, and of the other covenants herein contained * * * that the payment thereof shall be extended for a further period of six months from September 26, 1908, and the said 'Oil Company' agrees to pay the said loan, together with all interest which may be due thereon, at the expiration of said period. All the covenants and provisions of the said agreement of March 26, 1905, and all other agreements which have been made with the said 'Trust Company' in respect to the said loan, shall apply to the said loan as so extended. * * *

"Second. This extension shall not, however, become operative until the same shall have been consented to by all the underwriters, by their subscribing to this agreement. * * *

"Fourth. The several underwriters and the said H. H. Peters and Herbert E. Roycroft, individually, hereby consent to this agreement, and to the extension of the said loan, and agree that the same shall not affect or impair the several obligations imposed upon them by the said agreement of March 26, 1906, October 17, 1906, March 26, 1907, and May 6, 1907."

Stearns, Chamberlain & Royon and Jerome F. Patterson, all of Cleveland, Ohio, for plaintiffs in error.

W. D. Turner, of Cleveland, Ohio, Wingate & Cullen, of New York City, and M. B. & H. H. Johnson, of Cleveland, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] 1. The first defense is that the original contract for a $100,000 loan was so far modified as to release the guarantors. The modification was material, and we see no occasion to doubt that a nonconsenting guarantor would have been released; so that this case must turn on the effect of the instrument of consent signed by Holcomb and Latimer. Their counsel argue that, at the time of the consent to the extension, the guarantors were not liable, because the loan which they had agreed to guarantee had never been made, and that their consent to the extension of some other loan, to which they were strangers, could not make them liable therefor, in the absence of a new, express promise by them. On the other side, it is urged that this defense is in the nature of a privilege, was waived because not claimed, and that, in any event, the formal consent to the extension implies a new promise to pay. We do not find it necessary to consider the legal question thus presented. Each of the extension agreements recited that the loan which had been made and to which the extension related, was one of $90,000, and then says:

"All the covenants and provisions of the said agreement of March 26, 1905, * * * shall apply to the said loan so extended."

Whether it is intended to refer to the preliminary agreement of March 9th, or to the guaranty of March 25th, the reference includes a "covenant and provision" by Holcomb and Latimer that they will guarantee $20,000 of the debt, and, in either view of the meaning of the reference, the express promise by Holcomb and Latimer in their original guaranty was thus, by the very words of each extension agreement, renewed and repeated as to the $90,000 loan. If, under the circumstances here existing, a new, express promise by the guarantor is required in order to continue or to recreate his liability, it is here present. The first defense is not sufficient.

[2] 2. In somewhat similar manner, the facts make it unnecessary to consider the second and third defenses in the light in which they were presented by counsel. If we fully accept defendants' theories, both of fact and of law, with regard to their reliance upon Conners' concurrent action in guaranteeing and in extending, and their original ignorance of his elimination from the field, yet they cannot deny knowledge of the facts recited in the last extension paper which they signed, nor the knowledge which must result from those recitals. They then had full notice that Mills had never become an underwriter, and that Peters and Roycroft had paid up their full original underwritings, leaving only Conners' $25,000, Holcomb's $10,000, and Latimer's $10,000, and then that Peters had paid "in cancellation of said amounts underwritten by him in said underwriting the further sum of $10,000." These recitals lead, inevitably, to the conclusion that Peters had been substituted for one of the original underwriters, and that this substitution must have been in the place of Conners, as there was no one else left besides Holcomb and Latimer. With this knowledge, Hol-

comb and Latimer join in the contract for a further extension of the remainder of the loan, and expressly agree that their original covenant of guaranty shall apply to the loan as so extended, and the Trust Company, at least in part upon consideration of this promise by Holcomb and Latimer, makes the desired extension. These facts and the degree of notice which they carry regarding Conners' elimination (and in the absence of any suggestion of bad faith or misleading by the Trust Company) do not permit Holcomb and Latimer to be heard to say that they then relied upon Conners. The second and third defenses are therefore unavailable.

The judgment must be affirmed, with costs.